IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHANNON HUSSEY, | ) |
| Plaintiff, | ) |
| v. | ) |
| EQUIFAX INFORMATION SERVICES, LLC, et al., | )  Case No. 2:20-cv-2791-JPM-atc |
| Defendants. | ) |

**ORDER GRANTING DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY D/B/A FEDLOAN SERVICING COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

The cause is before the Court on Defendant Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing Company's Motion for Judgment on the Pleadings, filed December 1, 2021. (ECF No. 64.) Defendant also filed an accompanying Memorandum in Support of Its Motion. (ECF No. 65.) Plaintiff, Shannon Hussey, filed a Response on December 30, 2021. (ECF No. 66.) On January 12, 2022, Defendant filed a Reply. (ECF No. 67.)

For the reasons set forth below, Defendant's Motion for Judgment on the Pleadings is **GRANTED**.

**I.    BACKGROUND**

*A.  Factual Background*

This is an action for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.[1] (See generally First Amend. Compl., ECF No. 14.) Plaintiff alleges that Defendant

---

[1] Plaintiff also alleged violations of the Fair Debt Collection Practices Act ("FDCPA") against Defendants who have since been dismissed from the case. (See First Amend. Compl., ECF No. 14 ¶¶ 108–21, ECF Nos. 60, 63.)

Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing Company ("PHEAA"), a furnisher, is "inaccurately reporting [its] tradelines ('Errant Tradelines') with an erroneous notation of 'account in dispute' on Plaintiff's Equifax and Trans Union credit disclosures."[2]  (Id. ¶ 13.)

On August 20, 2020, Plaintiff received his[3] credit disclosures from credit reporting agencies ("CRAs") Equifax and Trans Union and "noticed the Errant Tradelines," which were reporting with an "account in dispute" notation although Plaintiff no longer disputed these accounts.  (Id. ¶¶ 25–26.)  On or around October 26, 2020, Hussey sent a letter to Equifax and Trans Union informing them that he no longer disputed the Errant Tradelines and requesting that they remove the dispute notation.  (Id. ¶ 27.)  Equifax and Trans Union forwarded Hussey's dispute to PHEAA, who received the dispute from them.  (Id. ¶ 28.)

On December 8, 2020, Plaintiff had not yet received investigation results from Equifax or Trans Union, so he obtained his credit disclosures from those entities.  (Id. ¶ 29.)  The credit disclosures continued to include the notation of "account in dispute".  (Id.)  Plaintiff alleges that PHEAA, Equifax, and Trans Union "failed or refused to remove the notation" (id.) and that PHEAA "failed to direct Equifax and Trans Union to remove the erroneous notation" (id. ¶ 46).

Plaintiff alleges that Defendants' failure to remove the incorrect "account in dispute" notation makes PHEAA's tradelines "false and misleading to any user of the credit reports" and "damages [] Plaintiff by preventing [him] from obtaining any mortgage loan refinancing[,] . . . as no conventional lender will grant a mortgage based on any credit report[] that has any tradelines

---

[2] Equifax Information Services, LLC ("Equifax") was formerly a Defendant in this case and was dismissed pursuant to the Parties' Stipulation of Dismissal.  (ECF No. 51.)  Trans Union, LLC ("Trans Union) remains a Defendant in the case.  This Order omits mention of allegations against dismissed Defendants except where relevant.

[3] Although Plaintiff's First Amended Complaint refers to Plaintiff using she/her pronouns (see generally ECF No. 14), Defendant states that "[p]reliminary discovery and investigation in this case indicate that Plaintiff is a male whose preferred pronouns are he/him/his." (ECF No. 65 at PageID 270 n.1).  Plaintiff's Response is inconsistent in the pronouns by which it refers to Plaintiff but more often uses he/him pronouns.  (See generally ECF No. 66.)

or other item flagged as disputed." (Id. ¶ 30.) Plaintiff additionally alleges that, as the result of Defendants' "negligent and/or willful failure to comply with the Fair Credit Reporting Act," he has "suffered credit and emotional damages," as well as "undue stress and anxiety," and that he "has been unable to improve [his] financial situation by obtaining new or more favorable credit terms." (Id. ¶ 31.)

    B. Procedural Background

Plaintiff initiated this action on November 1, 2020. (Compl., ECF No. 1.) On March 3, 2021, Plaintiff filed a First Amended Complaint. (ECF No. 14.) PHEAA filed its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint on June 28, 2021. (ECF No. 36.) By December 1, 2021, all Defendants except PHEAA and Trans Union were dismissed voluntarily from the case. (See ECF Nos. 51, 54, 60, 63.) On that date, Defendant filed the instant Motion for Judgment on the Pleadings and the accompanying Memorandum in Support. (ECF Nos. 64, 65.) On December 30, 2021, Plaintiff filed a Response to the Motion. (ECF No. 66.) PHEAA replied on January 12, 2022. (ECF No. 67.) Trial in this case is set to begin on June 28, 2022. (ECF No. 52 at PageID 248.)

**II.   LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The manner of review under [Fed.R.Civ.P.] 12(c) is the same as a review under Rule 12(b)(6) . . . ." Jelovsek v. Bredesen, 545 F.3d 431, 434 (6th Cir. 2008). See also Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 480 (6th Cir. 2020) ("A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6).

A court evaluating that type of motion thus must follow the Supreme Court's changes to the pleading standards in [Iqbal and Twombly].") (internal citations omitted).

Fed. R. Civ. P. 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss only tests whether the plaintiff has pleaded a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot

"unlock the doors of discovery." Iqbal, 556 U.S. at 678–79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd 481 F. App'x 252 (6th Cir. 2012). A court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

**III.   ANALYSIS**

Plaintiff alleges two counts against PHEAA: negligent violation of 15 U.S.C. § 1681s-2(b) of the FCRA and willful violation of the same provision. (First Amend. Compl., ECF No. 14 ¶¶ 44–55.) 15 U.S.C. § 1681s-2(b) imposes certain duties on "furnishers of information" after they receive notice from a CRA of a dispute regarding the "completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). The Act authorizes consumers to bring civil suit for willful or negligent failure to comply with their (b)(1) duties. See id. § 1681n & o. Thus, to state a claim under § 1681s-2(b), a plaintiff must allege (1) that the furnisher received notice from a CRA that the plaintiff was disputing the information at issue, thereby triggering the furnisher's duties under § 1681s-2(b), and (2) that the furnisher "did not comply with the statutorily required duties." Baker v. JP Morgan Chase Bank, No. 3:16-0124, 2017 WL 395092, at *4 (M.D. Tenn. Jan. 30, 2017) (Mag. J. Barbara D. Holmes), report and recommendation adopted by 2017 WL 841141 (M.D. Tenn. Mar. 2, 2017) (citing Downs v. Clayton Homes, Inc., 88 F. App'x 851, 853–54 (6th Cir. 2004) (further citation omitted). The (b)(1) duties require the furnisher, to, inter alia, "conduct an investigation with respect to the disputed information" and "review all relevant information provided by the consumer reporting

agency." 15 U.S.C. § 1681s-2(b)(1)(A)–(B).  Plaintiff alleges that PHEAA negligently and willfully violated both of those obligations.  (First Amend. Compl., ECF No. 14 ¶¶ 45–46, 52–53.)

Plaintiff has failed to state a claim in either of his two counts, which are discussed in turn below.

### A. Negligent Violation of the FCRA

Defendant asserts that Plaintiff's claim against it under § 1681o for negligent violation of its 2(b) duties fails because "he has not—and cannot—establish that PHEAA violated its duties under Section 1681s-2(b) by failing to reasonably investigate Plaintiff's letters to Equifax and Trans Union." (ECF No. 65 at PageID 275.)  Defendant argues, in sum that (1) the FCRA obligated Defendant to maintain the dispute notation on Plaintiff's account until Plaintiff directly notified Defendant that he no longer disputed the account, which Plaintiff never did; and (2) even so, Defendant did not, as a matter of law, fail to conduct a legally adequate investigation, since any investigation would have only confirmed that Plaintiff once disputed the account.  (Id. at PageID 271–72.)

    1. Requirement that PHEAA report the account as disputed until directly notified otherwise by Plaintiff

Defendant contends that, under the FCRA, a "furnisher may not remove the dispute notation from its tradeline unless directly notified by the consumer that he or she no longer disputes the tradeline."  (ECF No. 65 at PageID 275.) (citing 15 U.S.C. § 1681s-2(a)(3); McGee v. Equifax Info. Servs., LLC, No. 1:18-cv-04144-MHC-CMS, 2019 WL 2714505, at *2–3 (N.D. Ga. Mar. 19, 2019) (Mag. J. Salinas), report and recommendation adopted, 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019); Roth v. Equifax Info. Servs., LLC, No. 2:16-cv-04325 JWS, 2017 WL 2181758, at *3 (D. Ariz. May 17, 2017).)  Therefore, Defendant contends, because Plaintiff alleges that he

6

reported that he no longer disputed the account to the CRAs and not directly to the furnisher, PHEAA was required to continue reporting the dispute and thus did not violate the FCRA by doing so; instead, Defendant contends, it would have violated the FCRA if it <u>removed</u> the dispute notation. (<u>Id.</u>) (citing 15 U.S.C. § 1681s-2(a)(3).) (<u>See also</u> ECF No. 65 at PageID 283–84.) (citing <u>McGee</u>, 2019 WL 2714505, at *3.)

> If the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person may not furnish the information to any [CRA] without notice that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(a)(3). In the two district court cases that Defendant cites, the courts dismissed the plaintiffs' claims that the defendants violated § 1681s-2(b) because the plaintiffs failed to allege that they directly informed the furnishers that their disputes had ended. <u>McGee</u>, 2019 WL 2714505, at *3 (citing <u>Roth</u>, 2017 WL 2181758, at *3); <u>Roth</u>, 2017 WL 2181758, at *3. Relying heavily on <u>Roth</u>, the <u>McGee</u> court held that the plaintiff's lack of direct notification meant that the furnisher "would have violated [§ 1681s-2(a)(3) of] the FCRA" by removing the dispute notation and thus "did not violate any of its obligations under the FCRA," including those under § 1681s-2(b), by retaining the notation as required. <u>McGee</u>, 2019 WL 2714505, at *3 (citing <u>Roth</u>, 2017 WL 2181758, at *3). <u>See also</u> <u>Roth</u>, 2017 WL 2181758, at *3.

Plaintiff responds that <u>Roth</u> and <u>McGee</u> are distinguishable and wrongly decided. (ECF No. 66 at PageID 425–29.) First, Plaintiff contends that Defendant's cited cases are distinguishable because, in those cases, "the plaintiff's FCRA claims . . . were dismissed because the plaintiff never directly informed the debt collector that she no longer disputed the debt after she *initially* disputed the debt directly to the debt collector." (<u>Id.</u> at PageID 426.) (citations omitted.) Plaintiff contends that "*Roth* and *McGee* are premised on the plaintiff having initially disputed the debt directly to the furnisher," which triggered the furnisher's duty to report the

7

dispute under 2(a)(3)." (Id. at PageID 427.) "[T]hat is not the situation here," Plaintiff contends, "[s]ince Plaintiff did not initially dispute her debt directly to PHEAA . . . ." (Id.)

Plaintiff urges the Court to rely instead on Harris, a case out of the Middle District of Florida, and Wheeler, a post-Roth opinion from the District of Arizona. (Id. at PageID 426–427.) In Harris, the plaintiff's complaint did not allege to whom she initially reported her dispute; the court declined to follow Roth and McGee, held that the plaintiff had sufficiently alleged a violation of § 1681s-2(b), and denied the defendant's motion to dismiss. See Harris v. Equifax Info. Servs., LLC, No. 8:20-cv-1770-T-60CPT, 2020 WL 6545977, at *2 (M.D. Fla. Nov. 6, 2020) ("While [Roth and McGee] support [the defendant's position], they involve slightly different facts and are not binding on this Court."); Harris, No. 8:20-cv-1770-T-60CPT (M.D. Fla. Sept. 14, 2020), ECF No. 9 at PageID 53–54. Meanwhile, the Wheeler court denied a 12(b)(6) motion to dismiss the plaintiff's allegations of violations by a CRA of §§ 1681e(b) & 1681i. See Wheeler v. Trans Union LLC, No. CV-17-03328-PHX-JAT, 2018 WL 2431876, at *3–5 (D. Ariz. May 30, 2018).

The Court is not persuaded by Harris or Wheeler. The Court agrees with Defendant that Wheeler is "irrelevant" as it involved claims brought under different sections of the FCRA and against a CRA rather than a furnisher. (ECF No. 67 at PageID 448.) The Court also agrees with Defendant that Harris is of limited use because it "provides no meaningful legal analysis" as to why it reached a contrary result and, additionally, is not binding on the Court. (Id. at PageID 448.)

Defendant further argues on Reply that whether Plaintiff alleged that he first reported the dispute to PHEAA is "'immaterial' and does not warrant a different result." (Id. at PageID 445.) (citations omitted.) Briscoe, a third case cited by Defendant that Plaintiff attempts to distinguish, supports this conclusion. (See ECF No. 66 at PageID 426.) In Briscoe, the plaintiff did not allege to whom she reported the dispute. Briscoe v. Equifax Info. Servs., LLC, No. 1:20-cv-02239-

8

WMR-CMS, 2020 WL 10046994, at *2 (N.D. Ga. Oct. 27, 2020) (Mag. J. Salinas), report and recommendation adopted by 2021 WL 2376663 (N.D. Ga. Jan. 12, 2021). Nevertheless, the court rejected the plaintiff's attempts to distinguish Roth and McGee on this ground, calling the plaintiff's "omi[ssion] of any allegation whatsoever indicating to whom [she] initially disputed the subject account" a "thinly veiled attempt to avoid the result in McGee." Id. at *7. Defendant cites numerous other cases from the Northern District of Georgia and other districts in which courts followed the Roth, McGee, and Briscoe line of cases where plaintiffs omitted mention of the entity to whom they reported their initial disputes and even where they definitively did not report to the furnisher. (See ECF No. 65 at PageID 278 n.3.) (citations omitted.) See also e.g., Sanchez v. Equifax Info. Servs., LLC, No. 20-15306 (SDW)(LDW), 2021 WL 2134923, at *2 n.2) (D. N.J. May 25, 2021) ("[T]he amended complaint fails to include key information that would allow this Court to assess whether Plaintiff's scenario is distinguishable from *Roth*."); Foreman v. Equifax Sols., LLC, No. 1:20-cv-1871-TCB-WEJ, 2020 WL 8254379, at *3–4 (N.D. Ga. Nov. 10, 2020) (Mag. J. Johnson), adopted by Foreman v. CCS Commercial, LLC, 2021 WL 2376341 (N.D. Ga. Jan. 19, 2021) (concluding, where evidence showed that the plaintiff had lodged the initial dispute with the CRA instead of the furnisher, that "this distinction [was] immaterial," since "[a]s the Complaint [was] written, plaintiff never directly told [the furnisher] that she no longer disputed the debt, and therefore it was required under the FCRA to retain that dispute status" based on the "plain language" of 2(a)(3)).

In other cases, however, courts have provided reasoned decisions declining to hold that a defendant was obligated to maintain the dispute notation where the plaintiff did not allege to whom they initially disputed the account. See, e.g., Green v. Americollect, Inc., No. 4:20-cv-01096-SRC, 2021 WL 2665937, at *3 (E.D. Mo. June 29, 2021) (describing the potentially "conflicting duties"

9

of furnishers that are created by §§ 1681s-2(a)(3) & 1681s-2(b) but holding that it "[could not] reach [the] question at this stage" of "which duty takes precedence," since the plaintiff "never allege[d] that she directly disputed the accuracy of her Americollect tradeline with Americollect [(the furnisher)], and thus the duties imposed by section 1681s-2(a)(3) were not triggered by [her] complaint"); Griffin v. Experian Info. Sols., Inc., No. 1:20-cv-801-RAH-SMD, 2021 WL 3782141, at *4 n.2 (M.D. Ala. Aug. 26, 2021) (finding that, where the consumer did not request removal of dispute notation directly with PHEAA, the court could not consider the source of the initial dispute because it was not alleged in the complaint and, thus, the court could not find further on PHEAA's argument that it was not permitted to remove the notation).

The case law that both Parties cite in support of their respective positions demonstrates the district court disagreement, and the lack of any binding authority, on the issue of whether Defendant would have violated its 2(a)(3) duty by removing the dispute notation. Courts answering in the negatory or declining to answer, however, have continued the inquiry by assessing in isolation whether the plaintiff sufficiently alleged a violation of the defendant's 2(b) duty to investigate. See, e.g., Green, 2021 WL 2665937, at *3 (concluding that the sole question was "whether [the plaintiff] pleaded sufficient allegations to state a claim under section 1681s-2(b)"); Griffin v. Equifax Info Sols., Inc., No. 1:20-CV-2316-TWT-CCB, 2021 WL 2557507, at *6 (N.D. Ga. Jan. 25, 2021) (Mag. J. Bly), adopted by 2021 WL 2558510 (Feb. 17, 2021) (concluding on nearly identical allegations to those here that "Plaintiff's request to the CRAs to remove the notation of a dispute triggered the Furnishers' obligation to conduct an investigation under section 1681s-2(b)(1)" and explaining that the "critical question, then, is whether the complaint sufficiently alleges that the investigation undertaken by the Furnishers was unreasonable") ("And this question, in turn, depends on what the Furnishers' investigation could

have uncovered."); Griffin, 2021 WL 3782141, at *3 (M.D. Ala. Aug. 26, 2021) (holding that where a consumer alleges that (1) the consumer previously disputed their account, (2) furnishers reported the account as 'in dispute" to CRAs, (3) the consumer later no longer disputed the account, (4) the consumer submitted letters to the CRAs asking them to remove the dispute notation, and (5) "the consumer[] did not dispute the notation[] directly with the furnisher[]," "at a minimum, a furnisher is obligated to undertake an investigation under section 1681s-2(b)(1)").

As Defendant asserts on Reply, "even if *McGee* is not squarely on point for the allegations asserted in Plaintiff's Complaint, . . . the question remains—what would a 'proper investigation' in accordance with [] § 1681s-2(b) have looked like under the circumstances presented in this case." (ECF No. 67 at PageID 445.) (quoting Briscoe, 2020 WL 10046994, at *7–8.) (alteration in original.) "In other words," as Defendant contends, "the relevant inquiry is *not* to whom Plaintiff directed his original dispute of PHEAA's account, but whether PHEAA's investigation should have uncovered that Plaintiff no longer disputed the account." (Id. at PageID 445–46.) See also e.g., Griffin, 2021 WL 2557507, at *7–9.

Thus, having considered the case law in depth, the Court finds it unnecessary to determine whether PHEAA was obligated by 2(a)(3) to continue reporting the account as "in dispute," because Plaintiff has failed to state a claim based solely with respect to whether Defendant breached its 2(b) duties.

2. Investigation under § 1681s-2(b)

In the Sixth Circuit, the investigation that the furnisher is required to conduct under § 1681s-2(b)(1)(A) "must be a reasonable one." Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 616 (6th Cir. 2012) (citations omitted). That is, a furnisher must "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified."

11

Pittman v. Experian Info. Sols., Inc., 901 F.3d 619, 629 (6th Cir. 2018) (quoting Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004)). Under the reasonableness standard, the investigation "must be a 'fairly searching inquiry,' or 'at least something more than a merely cursory review.'" Aubert v. Russell Collection Agency, Inc., No. 16-2755, 2017 WL 6541146, at *2 (6th Cir. Aug. 21, 2017) (quoting Boggio, 696 F.3d at 616). The furnisher must also "review all relevant information provided by the [CRA] pursuant to" § 1681i(a)(2), which requires a CRA to notify furnishers of a dispute that the consumer has submitted to the CRA. 15 U.S.C. § 1681s-2(b)(1)(B). "Courts have interpreted this requirement alongside the investigation requirement in § 1681s-2(b)(1)(A)." Boggio, 696 F.3d at 617. In particular, "the nature and specificity of the information provided by the CRA to the furnisher may affect the scope of the investigation required of the furnisher" in order to meet the reasonableness standard. Id. (citing Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004)).

The Eleventh Circuit has concluded that "[r]egardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete . . . ." Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1313 (11th Cir. 2018). To that end, a plaintiff must "identify[] some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete." Id.

Furthermore, several district courts have held that a consumer's statement to a CRA that the consumer wishes to remove a dispute notation is insufficient by itself to alert a furnisher that the notation is inaccurate or incomplete. See, e.g., White v. Wells Fargo Bank, N.A., No. 1:20-

12

cv-01870-LMM-AJB, 2021 WL 2020612, at *2 (N.D. Ga. Feb. 17, 2021) (quoting Foreman, 2020 WL 8254379, at *3) ("[B]ecause Plaintiff communicated her withdrawal to CRAs and not to Defendant, a furnisher, Defendant 'had nothing to investigate.'"); Bell v. Experian Info. Sols., Inc., No. 3:20-cv-00074-DHB-BKE (S.D. Ga. Oct. 19, 2021), ECF No. 43 at 11 (quoting Foreman, 2020 WL 8254379, at *4; Roth, 2017 WL 2181758, at *9) ("[W]ithout any further information directly from the plaintiff, there was nothing for the furnisher to investigate, and 'any investigation would have yielded no new information to compel it to withdraw plaintiff's dispute.'"); Sanchez, 2021 WL 2134923, at *3 ("[I]t is challenging to see how the Amended Complaint withstands dismissal, without identifying facts that First Premier could have located in a subsequent investigation to demonstrate that its reported information was inaccurate."); Fisher v. Equifax Info. Servs., LLC, No. 1:20-cv-2852-SDG-CMS, 2021 WL 2481852, *2 (N.D. Ga. Jan. 22, 2021) (Mag. J. Salinas); Griffin, 2021 WL 2557507, at *8 ("Simply put, the investigation would have had to turn up something more than the request from Plaintiff herself [to the CRAs]."); Briscoe, 2020 WL 10046994, at *8 ("There is nothing that an independent investigation by Rent Recovery might have added to Plaintiff's own statement in her letter to Equifax. Plaintiff has identified no facts that Rent Recovery could have uncovered through an investigation that the reported information was, in fact, inaccurate or incomplete."); Roth, 2017 WL 2181758, at *3 ("[The furnisher] had nothing to investigate upon receipt of the notice from Equifax [that the plaintiff no longer disputed the debt]. . . . The last [the furnisher] heard directly from [the] [p]laintiff was that she disputed the debt[,] and that is all any investigation of [the furnisher's] files would have turned up.").

Recently, the Eleventh Circuit affirmed the result in White and rejected the plaintiff's argument that her "statement [to the CRAs] that she no longer disputed the [furnisher's] tradeline and wanted the inaccurate dispute remarks removed provided all the relevant information

13

necessary for [the furnisher] to perform its investigation." White v. Equifax Info. Servs, LLC, No. 21-11840, 2021 WL 6102458, at *2 (11th Cir. Dec. 23, 2021). In holding that the plaintiff did not "plausibly allege that [the furnisher] failed to conduct a reasonable investigation," the court stated:

> [W]hen the CRAs forwarded [the plaintiff's] letter, [the furnisher] reasonably understood it as a request by the CRAs to verify that their reporting about the status of Ms. White's account matched the status of Ms. White's account in the [furnisher's] official records. Faced with such a request, the reasonable thing for [the furnisher] to do, as a matter of law, was to check its official records. . . . Nothing more was required.
>
> What Ms. White wants [the furnisher] to do—either (1) to intuit that she no longer disputed the tradeline from her report to the CRAs or (2) to reach out to her directly to clarify and confirm that she no longer wished to dispute the tradeline—goes beyond what FCRA reasonableness requires.

Id. at *2.

Defendant contends that, per both Felts and the opinions above that hold that a consumer's request to a CRA to remove an "in dispute" notation is insufficient to satisfy Felts's standard, Plaintiff has failed to state a claim under § 1681s-2(b) because he "never directly notified PHEAA that his dispute of his reporting had ended." (ECF No. 65 at PageID 284; see also id. at PageID 277.) Therefore, Defendant asserts, "PHEAA could have no record or information to reflect that Plaintiff no longer disputed its reporting, and any investigation by PHEAA would have simply found that Plaintiff had disputed PHEAA's reporting of the account, which is true." (ECF No. 65 at PageID 284.) (citing Roth, 2017 WL 2181758, at *9.) "In sum," Defendant contends, "Plaintiff does not allege facts to plausibly show that PHEAA could have discovered information during an investigation 'establish[ing] the reported information was, in fact, inaccurate or incomplete.'" (Id. at PageID 286.) (quoting Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1313 (11th Cir. 2018).)

Plaintiff does not directly dispute that the Court should follow Felts. Plaintiff, however, states that he "is not required to plead the 'particularized facts' sought by PHEAA," both because he is not alleging a class of claim that is required to be pled with particularity under Rules 9(b) & (g) and also because he "cannot know the details [about PHEAA's investigation of his disputes] until [he] engages in discovery." (ECF No. 66 at PageID 434.) Plaintiff cites various cases to support his contention that he has "properly pled that PHEAA failed to conduct a proper investigation of Plaintiff's dispute" and that any further facts "are classic matters for discovery in FCRA cases." (Id. at PageID 434–35.) (citations omitted.) See, e.g., Ellis v. Equifax Info. Servs., LLC, No. 1:18-cv-5185-TCB-CMS, 2019 WL 3521436, at *5 n.7 (N.D. Ga. June 6, 2019) (Mag. J. Salinas), adopted by 2019 WL 5406558 (N.D. Ga. June 25, 2019); Burns v. Trans, No. 4:18-03120-MGL, 2019 WL 3890833, at *3–4 (D. S.C. Aug. 19, 2019).

Defendant replies that it has not "sought to raise the burden and require Plaintiff to comply with Rule 9's heightened pleading requirements." (ECF No. 67 at PageID 441 n.1.) (citing ECF No. 66 at PageID 434.) Instead, Defendant asserts, Plaintiff's pleading fails "because, under the facts alleged, PHEAA's investigation was reasonable as a matter of law." (Id.)

While Felts reached its holding on summary judgment, leading other cases at the motion to dismiss stage to distinguish Felts on that basis and allow those plaintiffs to proceed to discovery, Plaintiff here has not pled any facts suggesting that PHEAA's records could possibly include any information to refute that the account was still disputed. See, e.g., Griffin, 2021 WL 3782141, at *4 (citing Felts, 893 F.3d at 1313) ("Griffin's Complaint is woefully deficient in alleging facts showing that the results of PHEAA's investigation would have been different."). Indeed, Plaintiff admits that there "was nothing for PHEAA to investigate beyond the dispute letter, as nothing beyond the dispute letter was relevant to Plaintiff's dispute." (ECF No. 66 at PageID 436.)

15

Plaintiff's cited cases are not binding on this Court and/or are distinguishable from the case at hand. The Court finds no reason to disregard the reasoning of Felts; Plaintiff must, at least, plead some facts showing that a more thorough investigation by Defendant could have turned up incomplete or inaccurate information as to Plaintiff's account, thereby "triggering [PHEAA's] obligation to correct the information." Felts, 893 F.3d at 1313.

Plaintiff also refutes Defendant's contention that his letter to the CRAs was itself insufficient to indicate that the "in dispute" notation was inaccurate and in need of correction. (ECF No. 66 at PageID 435–36.) Defendant's argument stems from Defendant's application of language from § 1681s-2(a) to the investigatory duties of § 1681s-2(b). In particular, under § 1681s-2(a), a furnisher "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Moreover, "[f]or purposes of [that provision], the term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." Id. § 1681s-2(a)(1)(D) (emphasis added). Defendant applies § 1681s-2(a)(1)(D)'s definition to § 1681s-2(b)(1)(D)'s requirement that furnishers report the results of its investigation to the relevant CRAs "if the investigation finds that the information is incomplete or inaccurate." Defendant argues that the furnisher's investigation of a dispute from a CRA "would have had to turn up something more than the request from Plaintiff [himself]" to the CRA. (ECF No. 65 at PageID 277.) (quoting Griffin v. Equifax Info. Servs., LLC, et al., 2021 WL 2557507, at *8.

Plaintiff responds that the "other than solely allegations by the consumer" language in § 1681s-2(a)(1)(D) "has no application to a furnisher's investigation of a consumer's dispute and is

16

not found in the same subsection" but instead "simply defines what constitutes reasonable cause for a furnisher to believe that information is inaccurate with respect to its furnishing of information." (ECF No. 66 at PageID 435–36.) This language does not, Plaintiff contends, "define or determine a furnisher's duties to investigate a consumer's dispute[,] and it does not define whether a furnisher actually reported inaccurate information." (Id. at PageID 436.) Therefore, Plaintiff contends, the language is inapplicable to Plaintiff's claim under § 1681s-2(b).[4] (Id.) Plaintiff admits that there "was nothing for PHEAA to investigate beyond the dispute letter, as nothing beyond the dispute letter was relevant to Plaintiff's dispute"; Plaintiff contends, however, that "PHEAA needs nothing beyond Plaintiff's dispute letter to investigate Plaintiff's dispute." (Id.)

> Plaintiff also asserts:
>
> Taking PHEAA's argument to its natural conclusion, a consumer wishing to dispute an inaccurate dispute status would have to first send a dispute letter to PHEAA for the sole purpose of placing a document in PHEAA's files for review in connection with a subsequent dispute. Then, Plaintiff would have to send a second dispute letter, so PHEAA would have the first dispute letter in its files to review and then correct the tradeline.
>   Of course, Congress did not intend such an absurd result when it enacted the FCRA.

(ECF No. 66 at PageID 437–38.) Defendant replies that:

> Despite Plaintiff's assertion that it would be "absurd" for him to have to submit disputes to both PHEAA and a CRA, that is exactly how the FCRA and its implementing regulations operate. Were Plaintiff's true intent to remove the dispute notation, it would have been far less "absurd" for Plaintiff to notify PHEAA directly, rather than manufacturing this lawsuit.

(ECF No. 67 at PageID 441.) (See also id. at PageID 443 n.2.)

While the FCRA is to be "liberally construed in favor of the consumer," Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 964 (6th Cir. 1998), Plaintiff has put forward almost no legal

---

[4] Plaintiff refers to Defendant as "First Premier" in this sentence of the Response. (See ECF No. 66 at PageID 436.) The Court interprets this as a typographical error substituting the name of a defendant from a different case.

authorities to support his own statutory interpretation regarding this issue, while Defendant has cited numerous persuasive cases to support its position. (See ECF No. 66 at PageID 435–38; ECF No. 65 at PageID 277–86.)  Plaintiff cites "*Watkins*"[5] and Roth for the propositions that "[t]he reasonableness of the investigation depends on the circumstances of the dispute" and that the "'[t]he decision to dispute or not dispute a debt is completely up to the debtor.'"  (ECF No. 66 at PageID 438.) (quoting Roth, 2017 WL 2181758, at *3.) (alterations in original.)  Thus, Plaintiff contends, "the reasonableness of an investigation of a dispute of an inaccurate dispute status does not involve historical matters, but rather whether the consumer currently disputes the debt.  That determination can **only** be made by looking at the consumer's current dispute letter."  (Id.)  The Court cannot agree.  Contrary to Plaintiff's assertion that if Plaintiff's previous dispute to the CRA's "is an objective fact, then Plaintiff's current dispute is also an objective fact" (ECF No. 66 at PageID 437), while the initial decision whether to dispute an account is singularly within a plaintiff's control, it does not follow that a letter expressing the plaintiff's wish to terminate that dispute should unilaterally form the basis for such termination.  Moreover, as Defendant asserts on Reply, the FCRA was designed with two avenues for plaintiffs to lodge disputes: indirectly to a CRA under § 1681i and directly to a furnisher under § 1681s-2(a)(8).  (ECF No. 67 at PageID 443 n.2.)  That Plaintiff would be required to submit more than simply his letter to the CRAs to terminate the dispute notation is not "absurd" but is, instead, directly contemplated by the statute.

       Persuasive guidance from the Federal Trade Commission (FTC) also supports Defendant's argument.  The FTC instructs consumers that, to correct mistakes on their credit reports, they should "contact the credit bureau [i.e., the CRA] and the business that reported the inaccurate

---

[5] Plaintiff never provides a citation for this case, and the Court has been unable to find a relevant case with that name.  The Court wonders if Plaintiff intended to refer to Boggio, discussed supra.

information [i.e., the furnisher]" and dispute the information.  Federal Trade Commission, Consumer Information, "Disputing Errors on Your Credit Reports," May 2021, available at httsp://www.consumer.ftc.gov/articles/disputing-errors-your-credit-reports, accessed March 8, 2022 (emphasis added).  See also Griffin, 2021 WL 2557507, at *8.  (See also ECF No. 67 at PageID 443 n.2.)

In sum, the Court is persuaded by the cases that hold that a plaintiff's letter to a CRA requesting removal of an "in dispute" notation is insufficient to meet the Felts standard and thus that a defendant cannot, as a matter of law, fail to conduct a reasonable investigation under § 1681s-2(b) where the plaintiff never terminates the dispute directly with the furnisher, regardless of to whom the plaintiff initially disputed the account.  (See ECF No. 65 at PageID 277–83, 278 n.3.) (collecting cases.)

Moreover, even if a plaintiff's letter to a CRA is sufficient in some instances to demonstrate an inaccuracy in the "in dispute" notation, Plaintiff has alleged

> no information about key facts, such as when did [he] first dispute the PHEAA account, how did [he] dispute it, why did [he] dispute it, and why [he] decided to no longer dispute it.  And more importantly, the Complaint is generally silent and void of details as to exactly what kind of investigation PHEAA should have performed, what it should have reviewed, who should it have consulted, and what exactly it would have discovered and why.

Griffin, 2021 WL 3782141, at *4 (citing Felts, 893 F.3d at 1313) (finding that the "interpretive battle" of whether "PHEAA could have relied solely on Griffin's request to the CRAs to remove the disputed notation as evidence that Griffin [did], in fact, no longer dispute the PHEAA account" was "premature at this point because Griffin's Complaint is woefully deficient in alleging facts showing that the results of PHEAA's investigation would have been different").

As Plaintiff has therefore failed to allege a violation of Defendant's duties under § 1681s-2(b), his claim for negligent violation of the statute under § 1681o also cannot stand.  See Chandler

19

v. Peoples Bank & Trust Co. of Hazard, No. 6:17-CV-00050-GFVT, 2018 WL 1473800, at *4 (E.D. Ky. Mar. 26, 2018), affirmed by 769 F. App'x 242 (6th Cir. 2019) ("For a claim to arise out of [§ 1681o], [the defendant] must first be in violation of the duties of § 1681s-2(b)."). Accordingly, Defendant's Motion for Judgment on the Pleadings is GRANTED as to Plaintiff's claim for negligent violation of the FCRA.

B. *Willful Violation of the FCRA*

For the same reason that Plaintiff's claim for negligent violation of the FCRA fails, so too does his claim for willful violation of the statute. See id. ("For a claim to arise out of [§ 1681n], [the defendant] must first be in violation of the duties of § 1681s-2(b)."). The Court discussed above why Plaintiff has failed to allege that Defendant violated its duties pursuant to § 1681s-2(b). Accordingly, Defendant's Motion is GRANTED with respect to Plaintiff's claim of willful violation under § 1681n of the FCRA.

IV. **CONCLUSION**

For each of the reasons set forth above, Defendant Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing Company's Motion for Judgment on the Pleadings is **GRANTED**.

**SO ORDERED**, this 21st day of March, 2022.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE